IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| JOHN BRINDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MEMPHIS, TENNESSEE; | ) | No. 17-cv-2849-SHM-dkv |
| MICHAEL RALLINGS, in his | ) | |
| official capacity as director | ) | |
| for the Memphis Police | ) | |
| Department; and DANIEL | ) | |
| BARHAM, individually and in | ) | |
| his official capacity as | ) | |
| Lieutenant for the Memphis | ) | |
| Police Department, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ORDER

Before the Court is Plaintiff John Brindley's Motion for
Preliminary Injunction, filed on November 30, 2017. (ECF Nos.
9 & 9-21.) Plaintiff seeks to enjoin Defendants City of
Memphis, Tennessee; Michael Rallings, in his official capacity
as Director for the Memphis Police Department; and Daniel
Barham, individually and in his official capacity as Lieutenant
for the Memphis Police Department (collectively, "Defendants")
"from enforcing a policy and practice of removing individuals
engaged in unwelcomed expressive activity from a public way
based solely on whether the area is privately-owned and not

whether it is dedicated to the public or constitutes a public forum for expression, and consequently, directing police officers to remove Brindley from Virginia Run Cove, a traditional public forum, upon request of an apparent property owner who disliked his speech." (Id. at 33.) Defendants responded on January 18, 2018. (ECF No. 18.) Plaintiff replied on January 28, 2018. (ECF No. 21.) Defendants filed a sur-reply on February 12, 2018. (ECF No. 23.) Plaintiff responded on March 5, 2018. (ECF No. 27.)

For the following reasons, Plaintiff's Motion for Preliminary Injunction is DENIED.

## I.  Background

### A. The Cause of Action

This case arises from Plaintiff's attempt to promote a pro-life message on a road outside a Planned Parenthood clinic in Memphis, Tennessee.  The central dispute is whether the road should be characterized as a public or private forum under the First Amendment.

On May 1, 2017, Plaintiff arrived at the Planned Parenthood clinic at 835 Virginia Run Cove in Memphis, Tennessee.  (ECF No. 1 ¶ 46.)  Plaintiff expressed his views

while standing in the road, on Virginia Run Cove, close to the clinic. (See id. ¶¶ 49-51.)

Less than an hour after Plaintiff's arrival, a representative of Planned Parenthood asked him to leave. (Id. ¶ 52.) Plaintiff refused because he was on public property. (Id.) The Planned Parenthood representative told Plaintiff that the road was private, not public. (Id. ¶ 53.) Plaintiff declined to leave. (Id. ¶ 54.)

A Memphis police officer arrived and conferred with the Planned Parenthood representative. (Id. ¶ 55.) The officer told Plaintiff to leave because the road was private property. (Id. ¶ 57.) Plaintiff objected to the officer's characterization. (Id. ¶ 58.) The officer offered to contact a supervisor to resolve the issue, which Plaintiff accepted. (Id. ¶ 58.)

Lieutenant Daniel Barham arrived. (Id. ¶ 59.) He told Plaintiff that the road was private property and asked Plaintiff to leave. (Id. ¶¶ 59-61.) When Plaintiff questioned the classification of the road, Lieutenant Barham said that he had been informed about the status of the property by his superior. (Id. ¶ 62.)

Plaintiff moved to Summer Avenue, a public street that intersects with Virginia Run Cove, to relay his pro-life message.  (Id. ¶ 65.)  Unconvinced that the "over 300 f[oo]t" distance between him and the Planned Parenthood clinic would allow him to reach his intended audience adequately, Plaintiff abandoned the effort to promote his pro-life message at the clinic.  (Id. ¶¶ 65, 67.)

On November 20, 2017, Plaintiff filed his complaint against Defendants, alleging violations of Plaintiff's First Amendment and Due Process rights.  (ECF No. 1.)

On November 30, 2017, Plaintiff filed the Motion for Preliminary Injunction.  (ECF No. 9.)

Defendant Lieutenant Daniel Barham answered the complaint on December 21, 2017.  (ECF No. 16.)  Defendant City of Memphis, Tennessee answered on January 4, 2018.  (ECF No. 17.)

### B. 835 Virginia Run Cove

Virginia Run Cove is a two-lane cul-de-sac off Summer Avenue in Memphis, Tennessee.  It provides access to multiple parking lots for businesses located on the Cove.



(ECF No. 9-2 at 52 (alteration added).)

Virginia Run Cove is marked with a blue-and-white street
sign. (ECF No. 9-6.) There are no sidewalks along the entire
cul-de-sac. (See ECF Nos. 9-5, 9-7, 9-8, 9-9, 9-11, 9-15.)
Medians separate Virginia Run Cove from the business parking
lots. (See ECF No. 9-12.) Those medians have trees and
manicured grass and hedges. (See ECF Nos. 9-12, 9-15.) The
entire road is asphalt. (See, e.g., ECF Nos. 9-5, 9-7, 9-8, 9-
9, 9-11, 9-15.)

Virginia Run Cove is part of a planned development
property known as 5352 Summer Avenue P.D. (ECF Nos. 9-2, 9-3,
18-1.) On January 10, 2007, the owners of the subdivisions on
5325 Summer Avenue P.D. signed a Final Plat. Preceding each of
their signatures is the following statement:

> The undersigned owner of the property shown hereon,
> hereby adopt this plat as my plan of subdivision, and
> dedicate the streets, right-of-ways, easements and
> rights of access as shown to the public use forever,

and hereby certify that I am the owner in fee simple,
duly authorized so to act and that said property is
unencumbered by any taxes which have become due and
payable.

(ECF No. 9-2 at 55.)  On January 30, 2007, Virginia Run Cove,

alone, was transferred by quitclaim deed from 5325 Summer Ave.

Properties, LLC to 5325 Summer Avenue Property Owners

Association, Inc.  (ECF No. 9-3.)  Virginia Run Cove is subject

to property tax.  (ECF No. 18-2.)

## II.  Jurisdiction

This Court has federal question jurisdiction.  Under 28

U.S.C. §§ 1331, United States district courts have original

jurisdiction "of all civil actions arising under the

Constitution, laws, or treaties of the United States."

Plaintiff's First Amendment and Due Process claims arise under

the United States Constitution.  (See ECF No. 1 ¶¶ 78, 81.)

## III. Standard of Review

A preliminary injunction is an "extraordinary measure"

that is "one of the most drastic tools in the arsenal of

judicial remedies."  ACLU v. McCreary Cnty., 354 F.3d 438, 444

(6th Cir. 2003) (citing Detroit Newspaper Publishers Ass'n v.

Detroit Typographical Union No. 18, 471 F.2d 872, 876 (6th Cir.

1972)).  The movant bears the heavy burden of demonstrating his

entitlement to that extraordinary remedy.  Overstreet v.

Lexington–Fayette Urban County Gov't, 305 F.3d 566, 573 (6th Cir. 2002).

"[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000). Courts are "not inclined to grant the extraordinary remedy of a preliminary injunction based on inferences and disputed proof." Great Am. Opportunities, Inc. v. Cherry Bros., LLC, No. 3:17-CV-01022, 2018 WL 2218959, at *2 (M.D. Tenn. May 15, 2018). Preliminary injunctions should not be granted when the outcome in a case is doubtful or does not fall within well-established principles of law. McCreary Cnty., 354 F.3d at 444 (characterizing Detroit Newspaper Publishers Ass'n, 471 F.2d at 876).

District courts have discretion to grant preliminary injunctions, and a court's "determination will be disturbed only if [it] relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998) (citing Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n, 110 F.3d 318, 322 (6th Cir. 1997)); see also Moltan Co. v. Eagle–Picher Indus., Inc., 55 F.3d 1171, 1175 (6th Cir. 1995) (the Sixth Circuit

"will reverse a district court's weighing and balancing of the
equities only in the rarest of circumstances").

"The purpose of a preliminary injunction is merely to
preserve the relative positions of the parties until a trial on
the merits can be held." Univ. of Texas v. Camenisch, 451 U.S.
390, 395 (1981). Courts consider four factors in deciding
whether to grant a motion for a preliminary injunction:

> (1) whether the movant has a strong likelihood of
> success on the merits; (2) whether the movant would
> suffer irreparable injury without the injunction; (3)
> whether issuance of the injunction would cause
> substantial harm to others; and (4) whether the
> public interest would be served by issuance of the
> injunction.

Chabad of S. Ohio & Congregation Lubavitch v. City of

Cincinnati, 363 F.3d 427, 432 (6th Cir. 2004) (quoting Blue

Cross, 110 F.3d at 322). The four considerations "are factors

to be balanced, not prerequisites that must be met." Jones v.

City of Monroe, 341 F.3d 474, 476 (6th Cir. 2003) (citing In re

DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1984)); see

also Mascio v. Public Emps. Ret. Sys. of Ohio, 160 F.3d 310,

315 (6th Cir. 1998) (affirming the district court's issuance of

a preliminary injunction based on the "near certainty" of the

plaintiff's likelihood of success on the merits without

consideration of the other factors); Golden v. Kelsey–Hayes

Co., 73 F.3d 648, 657 (6th Cir. 1996) ("[P]roving irreparable

harm is not an absolute prerequisite to obtaining a preliminary injunction. . . . [A] court balances four factors in assessing whether it should issue a preliminary injunction.") (citation omitted).

A district court must "make specific findings concerning each of these four factors, unless fewer are dispositive of the issue." In re DeLorean Motor Co., 755 F.2d at 1228. Even if fewer are dispositive, "it is generally useful for the district court to analyze all four of the preliminary injunction factors." Leary, 228 F.3d at 739 n.3.

## IV. Analysis

Plaintiff seeks a preliminary injunction on his First Amendment and Due Process Claims. (See ECF No. 9-21.)

### A. First Amendment Claim

#### 1. Likelihood of Success on the Merits

Plaintiff argues that he is likely to succeed on the merits of his First Amendment claim because Virginia Run Cove is a public forum and his pro-life message is constitutionally protected speech. (See ECF No. 9-21.) Plaintiff contends that the road is a traditional public forum because under Tennessee property law the plat and deed prove that it was dedicated to

the public, and because the road "looks and functions like a public street." (Id. at 92, 97.)

Defendants contend that the plat, deed, and declaration of covenants establish that Virginia Run Cove is private property. (ECF No. 18 at 147-48.) Defendants also argue that the road is private because it is maintained by the property owners' association, has privately owned signs, and is "limited to those doing business or having business with the leaseholders within the planned development." (Id. at 148-51.)

A three-step forum analysis determines whether a restriction on speech violates the First Amendment: (1) whether the expression deserves protection, (2) the nature of the forum, and (3) whether the justification for excluding the expression satisfies the relevant standard. McGlone v. Bell, 681 F.3d 718, 731 (6th Cir. 2012).

### a.  Expression Deserving Protection

"As to the first [step], [Plaintiff's] desire to share his religious message through public speaking, one-on-one conversation, distribution of literature, and display of signs is protected First Amendment activity." Id. at 731-32. The first requirement is satisfied.

### b. Nature of the Forum

As to the second step, there are four types of property
for purposes of forum designation: traditional public fora,
designated public fora, limited public fora, and nonpublic
fora. Putnam Pit, Inc. v. City of Cookeville, 221 F.3d 834,
842 (6th Cir. 2000); Agema v. City of Allegan, 826 F.3d 326,
335 (6th Cir. 2016); Miller v. City of Cincinnati, 622 F.3d
524, 534 (6th Cir. 2010). The parties dispute whether Virginia
Run Cove is a traditional public forum.

Courts conduct a three-prong inquiry when determining
whether a forum is a traditional public forum: (1) the actual
use and purposes of the property, particularly its status as a
public thoroughfare and the availability of free public access
to the area; (2) the traditional or historic use of the
property for communication and assembly; and (3) the area's
physical characteristics. Parks v. City of Columbus, 395 F.3d
643, 648 (6th Cir. 2005) (holding that a public forum is
determined by looking at the "purpose of the forum and whether
it has been customarily used for communication and assembly"
and used as a public thoroughfare); Arkansas Educ. Television
Comm'n v. Forbes, 523 U.S. 666, 677 (1998) (holding that public
fora are identified by examining, inter alia, "the objective
characteristics of the property. . . ."). None of the prongs

11

is dispositive.  See United States v. Grace, 461 U.S. 171, 177
(1983); United States v. Kokinda, 497 U.S 720, 727 (1990).

"'Traditional public fora, such as streets, sidewalks, and
parks, are 'places which by long tradition or by government
fiat have been devoted to assembly and debate.'"  McGlone, 681
F.3d at 732 (quoting Perry Educ. Ass'n v. Perry Local
Educators' Ass'n, 460 U.S. 37, 45 (1983)); Hague v. Comm. for
Indus. Org., 307 U.S. 496, 515 (1939) (streets "have
immemorially been held in trust for the use of the public and,
time out of mind, have been used for purposes of assembly,
communicating thoughts between citizens, and discussing public
questions").  "A [public] street is continually open, often
uncongested, and constitutes not only a necessary conduit in
the daily affairs of a locality's citizens, but also a place
where people may enjoy the open air or the company of friends
and neighbors in a relaxed environment."  Heffron v. Int'l Soc.
for Krishna Consciousness, Inc., 452 U.S. 640, 651 (1981).
Although "public streets generally constitute traditional
public fora . . . there have been limited circumstances were
public streets or sidewalks are not considered public fora."
Parks, 395 F.3d at 648 (collecting cases).

"Public fora do not have to be physical gathering places,
nor are they limited to property owned by the government.

Indeed, in the majority of jurisdictions, title to some of the most traditional of public fora, streets and sidewalks, remains in private hands." Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C., 518 U.S. 727, 792 (1996) (Kennedy, J., concurring) (internal citations omitted); Marsh v. Alabama, 326 U.S. 501, 509 (1946) (holding that the First Amendment was violated when a corporate-owned municipality restricted an individual's speech)[1]; Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd. of Las Vegas, 257 F.3d 937, 948 (9th Cir. 2001) (holding that privately owned sidewalk was a traditional public forum because it was "seamlessly connected to public sidewalks at either end and intended for general public use"); see United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, 383 F.3d 449 (6th Cir. 2004) (holding privately owned sidewalk that encircled sports complex was a "traditional public forum"); McGlone, 681 F.3d at 733 (finding privately owned sidewalks on university campus public fora).

When property is privately owned, it is subject to the First Amendment in proportion with the owner's authorization of public use. "The more an owner, for his advantage, opens up his property for use by the public in general, the more do his

---

[1] "The town, a suburb of Mobile, Alabama, known as Chickasaw, is owned by the Gulf Shipbuilding Corporation." Marsh v. Alabama, 326 U.S. 501, 502 (1946).

rights become circumscribed by the statutory and constitutional rights of those who use it." Marsh, 326 U.S. at 506. Inversely, where a property owner invites the public for a more limited use, reflected in a utilitarian design facilitating only the specific commercial purpose of the invitation, the balance tips in favor of the owner, as the limited invitation results in the retention of some of the property's private nature. See Lloyd Corp. v. Tanner, 407 U.S. 551, 569 (1972) ("[P]roperty [does not] lose its private character merely because the public is generally invited to use it for designated purposes."). That limited use makes the property a limited public forum: "'a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" Miller, 622 F.3d at 534–35 (quoting Pleasant Grove City v. Summum, 555 U.S. 460, 469 (2009)).

"Where the property is not a traditional public forum [and not a limited public forum] and the government has not chosen to create a designated public forum, the property is either a nonpublic forum or not a forum at all." Arkansas Educ., 523 U.S. at 678.

The parties dispute whether the property documents prove that Virginia Run Cove is a traditional public forum. Plaintiff argues that Virginia Run Cove was dedicated to the

14

public with documents registered with the State and that it resembles a public street. (ECF No. 9-21 at 91-92.) Defendants argue there was no dedication, and even if there had been, the dedication "is only for a specific purpose" described in the plat. (ECF No. 23 at 205.)

### i. Actual, Historic, and Traditional Use

Plaintiff has failed to carry his burden of establishing that the actual, historic, or traditional uses of Virginia Run Cove make Virginia Run Cove a traditional public forum.

Plaintiff has not offered evidence "more stringent than the proof required to survive a summary judgment motion," Leary, 228 F.3d at 739, that Virginia Run Cove was dedicated for public use and thus constitutes a traditional public forum.

Under Tennessee property law,[2] "[t]o establish a dedicated public right-of-way, there must be a showing of an offer of dedication and a public acceptance of the offer. Both the offer of dedication and the public acceptance may be express or implied." Gentry v. McCain, 329 S.W.3d 786, 793–94 (Tenn. Ct. App. 2010) (citing West Meade Homeowners Ass'n, Inc. v. WPMC, Inc., 788 S.W.2d 365, 366–67 (Tenn. Ct. App. 1989). "Public

---

[2] Although Plaintiffs' claims are First Amendment and Due Process violations based on federal law, the scope of property rights is defined by state law. McLaurin v. Fisher, 768 F.2d 98, 102 (6th Cir. 1985). Tennessee property law applies to determine the scope of the property owner's and public's rights.

15

acceptance of an offer of dedication may consist of either a formal act on the part of public authorities or common use by the general public." State ex rel. Matthews v. Metro. Gov't of Nashville & Davidson Cty., 679 S.W.2d 946, 949 (Tenn. 1984).[3]

"Until the offer of dedication has been accepted by the donee or estoppel has arisen by intervening rights, the offer of dedication may be withdrawn or revoked." Smith v. Black, 547 S.W.2d 947, 951 (Tenn. Ct. App. 1976).[4]

On January 10, 2007, the owners of the 5325 Summer Avenue P.D. signed the Final Plat. Preceding each of their signatures was the following:

> The undersigned owner of the property shown hereon, hereby adopt this plat as my plan of subdivision, and dedicate the streets, right-of-ways, easements and rights of access as shown to the public use forever, and hereby certify that I am the owner in fee simple, duly authorized so to act and that said property is unencumbered by any taxes which have become due and payable.

(ECF No. 9-2 at 55.) On January 30, 2007, Virginia Run Cove was transferred by quitclaim deed from 5325 Summer Ave.

---

[3] A formal act by public authorities can include "placing and maintaining a sewer line in the . . . [offered] right-of-way." Gentry v. McCain, 329 S.W.3d 786, 794 (Tenn. Ct. App. 2010).

[4] "The general rule in Tennessee is that where property is dedicated for a public use, the public acquires only an easement in the property dedicated, and the underlying fee either remains in the original grantor and his heirs, or belongs to the abutting property owners where the easement conveyed is for a street or highway." City of Memphis v. Overton, 54 Tenn. App. 419, 424, 392 S.W.2d 86, 88 (1963), aff'd, 216 Tenn. 293, 392 S.W.2d 98 (1965).

Properties, LLC to 5325 Summer Avenue Property Owners Association, Inc. (ECF No. 9-3.)

Assuming the language contained in the Final Plat is an express dedication, the quitclaim transfer 20 days later could constitute a revocation of that dedication. See Black, 547 S.W.2d at 952 (A "conveyance of the subject property may effect a revocation" unless "the conveyance recognizes the existence of the dedication (offer), as by reference in the description of the property."); (see Quitclaim Deed, ECF No. 9-3 (referring to Final Plat, but not explicitly to dedication)).

Plaintiff provides no evidence that the dedication was accepted, let alone that it was accepted before the January 30, 2007 transfer. Plaintiff's unsupported allegations that "[t]he general public uses Virginia Run Cove for a variety of purposes, including walking, loitering, talking on phones, and socializing with others" (ECF No. 9-21 at 83 (citing Compl., ECF No. 1 ¶¶ 37-38)), do not satisfy Plaintiff's heavy burden to prove he is entitled to preliminary injunctive relief. Those allegations are also contested by Defendants. (ECF No. 18 at 151 ("Contrary to the Plaintiff's assertion, loiterers are not welcome and their presence will be met with the same response as was the Plaintiff – as a trespasser, violative of the ordinances and statutes in place which addresses [sic] such

17

criminal conduct.").)  The Court will not "grant the extraordinary remedy of a preliminary injunction based on inferences and disputed proof."  Cherry Bros., LLC, 2018 WL 2218959, at *2.

Plaintiff provides no evidence of the actual use and purpose of Virginia Run Cove, particularly its status as a public thoroughfare and the availability of free public access to the area.  Plaintiff provides no evidence of the historical or traditional use of Virginia Run Cove for communication and assembly.  Allegations alone are insufficient.  The first two prongs of the inquiry do not support a finding that Virginia Run Cove is a traditional public forum.

## ii.  Physical Characteristics

The parties also dispute whether the physical characteristics of Virginia Run Cove make it a traditional public forum.

Plaintiff has satisfied his burden of establishing that Virginia Run Cove's physical characteristics support a finding that it is a traditional public forum.  Virginia Run Cove has no differentiating physical characteristics that demonstrate it is privately owned or has a limited use.  As in McGlone and Gateway, Virginia Run Cove blends into the urban grid.

McGlone, 681 F.3d at 733; Gateway, 383 F.3d at 449. Its street
is physically indistinguishable from public streets. McGlone,
681 F.3d at 733; Gateway, 383 F.3d at 449. It is connected to
a public road. McGlone, 681 F.3d at 733; Gateway, 383 F.3d at
449. There are no signs or physical characteristics that
obviously differentiate Virginia Run Cove from surrounding
roads or restrict access for a particular purpose. Cf. Utah
Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1256
(10th Cir. 2005) (finding privately-owned Plaza was not public
forum because signs were posted at all entrances to the Plaza
and it was differentiated from the surrounding sidewalks).

Although Virginia Run Cove's physical characteristics
support a finding that it is a traditional public forum, the
forum analysis cannot "turn[] solely on the physical
characteristics [of the property]." Bishop v. Reagan-Bush '84
Comm., 819 F.2d 289 (6th Cir. 1987); Kokinda, 497 U.S at 727
("The mere physical characteristics of the property cannot
dictate forum analysis."). Because Plaintiff has failed to
carry his burden of establishing the first two prongs, he has
failed to establish that Virginia Run Cove is a traditional
public forum.

### c. Justification for Excluding Expression Under Relevant Standard

Because Plaintiff has failed to establish that Virginia Run Cove is a traditional public forum, Virginia Run Cove must be evaluated under the nonpublic forum standard.[5]

Expression may be excluded in a nonpublic forum "'based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" Kincaid v. Gibson, 236 F.3d 342, 348 (6th Cir. 2001) (quoting Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 806 (1985)). "[A] speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum . . . or if he is not a member of the class of speakers for whose especial benefit the forum was created[.]" Cornelius, 473 U.S. at 806 (citations omitted). The reasonableness of the restriction of speech in a nonpublic forum "must be assessed in the light of the purpose of the forum and all the surrounding circumstances." Id. at 809. The restriction "need only be reasonable; it need not be the most reasonable or the only

_____

[5] Defendants argue, in the alternative, that if not a nonpublic forum, Virginia Run Cove constitutes a limited public forum. (See ECF No. 18 at 150-51.) The Court need not determine whether Virginia Run Cove is a nonpublic forum or limited public forum here. The relevant standard is the same for both. See Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 829-30 (1995).

reasonable limitation." Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 683 (1992).

Plaintiff argues that excluding his pro-life message was not a "content-neutral [exclusion], narrowly tailored to a significant interest. . . ." (ECF No. 9-21 at 95.) Plaintiff contends that "[t]he only reason [Defendants] ha[ve] for banishing [Plaintiff] from Virginia Run Cove is that Planned Parenthood does not want [Plaintiff]'s expression to occur there." (Id.) Plaintiff represents that he was "not asked to avoid the obstruction of traffic, lower his noise level, or refrain from soliciting" and that the prohibition "from engaging in any form of expression whatsoever on Virginia Run Cove" is unconstitutional. (Id. at 95-96.)

Defendants argue that "loiterers are not welcome and their presence will be met with the same response as was the Plaintiff" and that even those socializing are not allowed "unless at the invitation of the occupants of the Planned Development whose right it is to exercise such rights on their private property." (ECF No. 18 at 151.)

Plaintiff's unsupported allegations are insufficient. Plaintiff has offered no evidence "more stringent than the proof required to survive a summary judgment motion," Leary, 228 F.3d at 739, that Defendants' exclusion of Plaintiff's

expression was "unreasonable" or not "viewpoint neutral." To the extent Plaintiff alleges the exclusion was not viewpoint neutral, Defendants dispute that allegation. (See ECF No. 18 at 151.) The Court will not "grant the extraordinary remedy of a preliminary injunction based on inferences and disputed proof." Cherry Bros., LLC, 2018 WL 2218959, at *2. Plaintiff has failed to establish that the justification for excluding his expression under the relevant standard is unconstitutional.

Plaintiff has failed to establish that he is likely to succeed on his First Amendment claim.

## 2. Irreparable Harm to Plaintiff

Plaintiff argues that, "[w]ithout the requested preliminary injunction, Memphis will continue to preclude Brindley from engaging in his protected expression on Virginia Run Cove." (ECF No. 9-21 at 98.) Although "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," Bays v. City of Fairborn, 668 F.3d 814, 825 (6th Cir. 2012), Plaintiff has failed to establish that Defendants' actions violated his First Amendment right. Thus, Plaintiff has failed to establish that he will suffer an irreparable harm absent preliminary injunctive relief.

### 3. Substantial Harm to Others

Plaintiff argues that "[r]equiring Memphis to recognize its constitutional obligations will cause no possible harm to it, as allowing Brindley's desired expression in a traditional public forum can pose no true harm." (ECF No. 9-21 at 98.) No substantial harm can be shown in enjoining unconstitutional practices. Chabad of S. Ohio & Congregation Lubavitch, 363 F.3d at 436. Where, as here, however, a plaintiff fails to establish that he is likely to succeed on his First Amendment claim, he has failed to establish that there would be no substantial harm to Defendants in granting the preliminary injunction.

### 4. Public Interest

Plaintiff argues that it is "'in the public interest to prevent violation of a party's constitutional rights.'" (ECF No. 9-21 at 98 (quoting Bays, 668 F.3d at 825)). That argument fails where, as here, Plaintiff has failed to establish that he is likely to succeed on his constitutional violation claim. Plaintiff also argues that "[s]ecuring the exercise of First Amendment rights on a street dedicated and open to the public is in the best interest of the general public." (Id.) That argument fails for the same reason. It also fails because

Plaintiff has failed to establish that Virginia Run Cove was dedicated to the public and that the dedication was accepted.

None of the preliminary injunction factors weighs in favor of granting Plaintiff the extraordinary relief of a preliminary injunction on his First Amendment claim. His request for a preliminary injunction on that ground is DENIED.

### B. Due Process Claim

### 1. Likelihood of Success on the Merits

Plaintiff argues that he is likely to succeed on his Due Process claim. "Because Memphis' ban fails to provide fair notice as to what conduct is allowed and what conduct is prohibited, the restriction is unconstitutionally vague. . . ." (ECF No. 9-21 at 98.)

A municipality may be held liable under § 1983 for constitutional violations occurring pursuant to an official government policy or custom. Monell v. Dep't of Soc. Services, 436 U.S. 658, 691 (1978).[6] To demonstrate an illegal policy or custom, a plaintiff must show "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or

---

[6] "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994).

supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." <u>Burgess v. Fischer</u>, 735 F.3d 462, 478 (6th Cir. 2013).

In addition to showing that a policy or custom exists, the plaintiff must demonstrate causation and culpability. The policy must be the "moving force of the constitutional violation." <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 819 (1985) (quoting <u>Monell</u>, 436 U.S. at 694); <u>Doe v. Claiborne County</u>, 103 F.3d 495, 508 (6th Cir.1996) ("In addition to showing that the School Board as an entity 'caused' the constitutional violation, plaintiff must also show a direct causal link between the custom and the constitutional deprivation. . . ."). "A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers." <u>Blackmore v. Kalamazoo Cty.</u>, 390 F.3d 890, 900 (6th Cir. 2004). The level of culpability the plaintiff must prove is greater than negligence. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989).

Plaintiff has failed to establish the existence of a policy or custom. Plaintiff has offered no evidence "more stringent than the proof required to survive a summary judgment motion." <u>Leary</u>, 228 F.3d at 739. He alleges that there is a "city policy and practice that directs police officers to

remove citizens from a public way upon request of [an] apparent
property owner without first determining whether the area is
dedicated to public use and constitutes a public forum for
expressive purposes." (ECF No. 1 ¶ 1.)[7] Plaintiff also
alleges that the "policy and practice is unduly vague,
selectively and arbitrarily ejecting [Plaintiff] and others
like him from Virginia Run Cove, while the rest of the public
is allowed to remain, violating his right to due process under
the Fourteenth Amendment." (ECF No. 9-21 at 97.) Defendants
dispute Plaintiff's allegations. (See ECF No. 18 at 151-52.)
The Court will not "grant the extraordinary remedy of a
preliminary injunction based on inferences and disputed proof."
Cherry Bros., LLC, 2018 WL 2218959, at *2.

Plaintiff has also failed to establish that he was
deprived of a constitutional right. To support his § 1983
claim, Plaintiff argues that his Due Process rights under the
Fourteenth Amendment were violated. (ECF No. 1 ¶ 81.) The Due

---

[7] At least one court facing similar circumstances found that "[a]n
officer who has sufficient cause to believe a property is private has no
duty to investigate further into the boundaries of the property. A one-
time removal of an individual for a reasonably supported trespass violation
subsequently found to be incorrect does not establish a policy which
violates constitutional rights." Spears v. City of Tucson, Arizona, 125 F.
Supp. 3d 903, 912 (D. Ariz. 2015), aff'd sub nom. Spears v. City of Tucson
et al., 686 F. App'x 492 (9th Cir. 2017); see also Skovgard v. Pedro, 448
F. App'x 538, 546-47 (6th Cir. 2011) (concluding that if an officer has
probable cause to arrest for trespassing at the time of the incident, a
constitutional violation has not occurred, despite trespasser's claims of
public property, and subsequent information revealing the property was
public).

Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV § 1. Courts recognize two types of Due Process claims: procedural and substantive. Vagueness challenges to laws that "regulate[] conduct and prescribe[] punishment" are substantive due process claims. Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

To prove a substantive due process violation, Plaintiff must establish either (1) "deprivations of a particular constitutional guarantee," or (2) government actions that "shock the conscience." Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs., 640 F.3d 716, 728 (6th Cir. 2011). "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted).

Plaintiff argues that he has been deprived of a constitutional guarantee because he has been denied his First Amendment rights. (See generally ECF Nos. 1, 9-21.) As discussed above, Plaintiff has failed to establish that his

First Amendment rights were violated.  He does not allege that he has been deprived of any other constitutional guarantees.

There is a "legitimate government interest" in protecting individuals from trespassers on private property.  See Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).  Plaintiff alleges that the officers believed the property was private and that Plaintiff could lawfully be removed from the property for trespassing.[8]  (See ECF No. 1 ¶¶ 55-57, 59.)  The officers' actions were rationally related to a legitimate government interest.

Given that Plaintiff has failed to establish that a policy or custom existed or that his First Amendment rights were violated, he has failed to establish that he is likely to succeed on his Due Process claim.

## 2. Irreparable Harm to Plaintiff

Plaintiff makes the same arguments he does above.  See Part IV.A.2.  Because Plaintiff has failed to show Defendants' actions violated his Due Process rights, he has failed to establish that he will suffer an irreparable harm absent preliminary injunctive relief.

---

[8] Given that Plaintiff has failed to establish that his constitutional rights have been violated, the Court need not address Plaintiff's individual capacity claims against Lieutenant Barham.

### 3. Substantial Harm to Others

Plaintiff makes the same arguments he does above.  See Part IV.A.3.  Because Plaintiff has failed to establish that he is likely to succeed on his Due Process claim, Plaintiff has failed to establish that there would be no substantial harm to Defendants in granting the preliminary injunction.

### 4. Public Interest

Plaintiff makes the same arguments he does above.  See Part IV.A.4.  Because Plaintiff has failed to establish that a constitutional violation occurred, he has failed to establish that a preliminary injunction is in the public interest.

None of the preliminary injunction factors weighs in favor of granting Plaintiff the extraordinary relief of a preliminary injunction on his Due Process claim.  His request for a preliminary injunction on that ground is DENIED.

### V.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is DENIED.

So ordered this 13th day of July, 2018.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE